IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-240-5813 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 355721071170312 | Case No. 1:20-mj- 144<br><br>**Filed Under Seal** |
|---|---|

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, William B. Johnson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 423-240-5813 with International Mobile Subscriber Identity 355721071170312 with listed subscriber of TracFone Wireless, Inc., utilized by Susan VRADENBURGH ("**Target Cell Phone #9**"), whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster, NJ, 07921. **Target Cell Phone #9** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Law Enforcement Officer with the Hamilton County Sheriff's Office sworn in by the Sheriff of Hamilton County, Tennessee. I have been so employed for the past 10 years. I am currently now assigned to the Drug Enforcement Administration ("DEA") as a Task Force Officer. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, and 846. I have also been involved in various types of electronic surveillance, the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking and of the laundering and concealing of proceeds of drug trafficking. I have had specialized training in and experience in the enforcement of laws concerning the activities of narcotics traffickers, including ten weeks of basic training in Nashville, Tennessee, as well as periodic refresher training offered by DEA, ROCIC, IPTM and other law enforcement entities. I am currently assigned to the DEA Chattanooga Resident Office. My current assignment involves the investigation of high-level drug trafficking organizations in Tennessee, Georgia and elsewhere.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been committed, are being committed, and will be committed by Susan VRADENBURGH. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Megan KNIGHT, Christopher AKERS, and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

8. Since approximately September 2019, the DEA Chattanooga, Chattanooga Police Department, Red Bank Police Department, and the Hamilton County Sheriff's Office and other federal, state, and local law enforcement agencies have been involved in an investigation involving Megan KNIGHT, Christopher AKERS and others. Through this investigation, Megan KNIGHT was identified as a significant distributor of methamphetamine and heroin in Tennessee. As detailed below, Megan KNIGHT was identified as a source of supply for methamphetamine and heroin.

9. On September 25, 2019, members of the DEA Chattanooga (CRO) and Chattanooga PD (CPD) interviewed two CPD Sources of information (SOI#1 and SOI#2) in reference to methamphetamine and heroin trafficking. SOI#2 indicated that Chris AKERS, Megan KNIGHTS significant other would travel to Atlanta, Georgia to purchase large quantities of methamphetamine and heroin and return back to Chattanooga, Tennessee to the distribute the drugs. SOI#2 stated AKERS goes to Atlanta, Georgia himself but usually has someone drive him. At this time SOI#2 indicated that Susan VRADENBURGH would frequently drive AKERS to Atlanta, Georgia to purchase the heroin and methamphetamine.

10. On October 16, 2019, AKERS and Cathy ARRINGTON were arrested during a traffic stop for possession of approximately 44.2 gross grams of methamphetamine, 136.5 gross grams of methamphetamine, approximately 44.9 gross grams of heroin, 13 orange pills, 45 unknown yellow pills, and $7,303.00 in U.S. Currency. During the traffic stop ARRINGTON was read her Miranda Rights and gave statements that she was unclear on where they were going and was acting at the direction of AKERS.

11. On August 04, 2020, SA Andrew Bergren and your affiant conducted an undercover purchase of one kilogram of methamphetamine from Armando MEJIA-ALMAZAN, aka "Present" in Norcross, Georgia, who the investigation has revealed is a source of supply for the KNIGHT DTO. Your affiant began undercover communications with MEJIA-ALMAZAN through Alfredo JACOBO DE JESUS, aka "Chi", believed to be in Mexico. JACOBA DE JESUS arranged the transaction between your affiant and MEJIA-ALMAZAN. Your affiant spoke with MEJIA-ALMAZAN, aka "Present" on telephone number 773-900-1563, utilizing assigned undercover telephone number 423-262-2413. These conversations resulted in your affiant and SA Bergren meeting with MEJIA-ALMAZAN, aka "Present" to purchase one kilogram of methamphetamine for $12,500.00 USC of DEA Official Advanced Funds (OAF).

12. On August 14, 2020, while reviewing jail calls through IC Solutions, your affiant located a call from inmate Amy SUTTON's user account with a dialed call to 423-240-5813, a telephone number utilized by Susan VRADENBURGH. IC Solutions requires individuals to register their phone number showing name and address. At the beginning of each call, IC Solution notifies users that all calls are recorded and monitored. During this call, VRADENBURGH answers the phone and Megan KNIGHT, who is incarcerated, explained that she is using SUTTON's account due to her pin not working. KNIGHT and VRADENBURGH are known to

Page 4 of 9
Case 1:20-mj-00144-SKL   Document 5   Filed 09/22/20   Page 4 of 12   PageID #: 12

your affiant by the sound of their voices. During the call, they refer to each other by first name. At approximately 13:49 minutes into the call, VRADENBURGH and KNIGHT are discussing Chris AKERS when KNIGHT asks VRADENBURGH, "Are you on your way back?" VRADENBURGH explained, "No, no, no, I went the right way, I'm not dealing with nobody right now, just directly, and you." KNIGHT responded, "Alright," and VRADENBURGH stated, "Things just feel like they are getting out of control, so." KNIGHT replied, "Yeah, just talk to uh, talk to him about it and everything when you get there and you know tell him what's going on." VRADENBURGH stated, "He don't want him (AKERS) involved." KNIGHT replied, "I already know, I already know, I already know, just tell him I said just change his fucking phone number, give it to you, I'll get it from you whenever I get out." VRADENBURGH explained, "He gave him (AKERS) the other number and he's not been answering." KNIGHT responded, "Okay good." VRADENBURGH then tells KNIGHT that, "He wants to have lunch so I'm going to check and make sure he has not been reached out to already." KNIGHT replied, "If he has just tell him to change his fucking phone numbers and I'll get it from you when I get out." VRADENBURGH and KNIGHT end the calls with their good byes and KNIGHT explains that she wants VRADENBURGH to be back home with her daughter. VRADENBURGH explains to KNIGHT it will be fine that everything will just have to slow down and everybody can just wait until KNIGHT gets out of jail. Based on training and experience and knowledge of this investigation your affiant believes during this call VRADENBURGH is currently traveling to Atlanta, Georgia, to meet with MEJIA-ALMAZAN, aka "Present" to pick up narcotics to transport back to Chattanooga, Tennessee. KNIGHT is worried about her daughter who is with AKERS and is wanting VRADENBURGH to find out the daughters wellbeing and to cut AKERS out from dealing with MEJIA-ALMAZAN, aka "Present," VREADENBURGH relays to KNIGHT that

MEJIA-ALMAZAN, aka "Present" does not want to "deal" with AKERS. VRADENBURGH and KNIGHT are in agreement that people or customers will just have to wait until KNIGHT gets out of jail.

13. On August 17, 2020, your Affiant reviewed the toll records for **Target Cell Phone #9** and observed that VRADENBURGH had communicated with 773-900-1563, utilized by Armando MEJIA-ALMAZAN aka, "PRESENT and DIEGO," the Atlanta source of supply, sixteen times between July 13, 2020, and July 23, 2020, and an additional four times during September and August 2020, on **Target Cell Phone #9**.

14. Your Affiant believes that based upon the aforementioned probable cause, that Susan VRADENBURG is using **Target Cell Phone #9** to facilitate her drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Cell Phone #9** through Verizon WIRELESS will allow investigators to locate the subject(s) utilizing the Target Cell Phones without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

15. In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as

Page **6** of **9**

Case 1:20-mj-00144-SKL   Document 5   Filed 09/22/20   Page 6 of 12   PageID #: 14

"tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that Verizon Wireless can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on Verizon Wireless's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that Verizon Wireless can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Verizon Wireless typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

18.  Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19.  I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20.  I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of ~~T-Mobile~~ Verizon. I also request that the Court direct ~~Verizon~~ Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the Target Cell Phones on Verizon Wireless network or with such other reference points

as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
William B. Johnson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on 9/22, 2020

_____
HONORABLE SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE ASSIGNED
CALL NUMBER 423-240-5813 WITH
INTERNATIONAL MOBILE SUBSCRIBER
IDENTITY 355721071170312

Case No. 1:20-mj-144

**Filed Under Seal**

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephones assigned call number 423-240-5813 with International Mobile Subscriber Identity 355721071170312 with listed subscriber as TracFone Wireless, Inc., utilized by Susan VRADENBURGH ("**Target Cell Phone #9**"), whose service provider is Verizon Wireless, a wireless telephone service provider whose legal compliance center is headquartered at 180 Washington Valley Road, Bedminster, NJ, 07921.

2. Records and information associated with the **Target Cell Phone #9 t**hat are within the possession, custody, or control of Verizon Wireless: including information about the location of the cellular telephones if they are subsequently assigned a different call number.

Page **1** of **1**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-240-5813 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 355721071170312 | Case No. 1:20-mj- 144<br><br>**Filed Under Seal** |
|---|---|

## ATTACHMENT B

**Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone #9** described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the **Target Cell Phone #9**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless. Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the **Target Cell Phone #9** on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**II.     Information to Be Seized by the Government**

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving Susan VRADENBURGH or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.